1  Pro Se
   Harriet Menezes
2  169 Thoreau Street, Apt. 8
   Concord, MA 01742
3

4

5

6  Harriet Menezes,                    ) Case No.:
                                       )
7            Plaintiff,                ) A CIVIL ACTION
                                       )
8        vs.                           ) Complaint
                                       )
9  United Airlines, Inc., and Frank    )
                                       )
10 Colosi individually and as Labor    )
   Relations Manager of United Airlines )
11 and Sara Fields, Vice President      )
                                       )
12                                     )
   and Paul MacKinnon individually and )
13 as International Treasurer of        )
                                       )
14 Association of Flight Attendants,    )
   Shirley Barber as International      )
15 Treasurer of United Airlines Master
16 Executive Council of the Association
17 of Flight Attendants, Maria Torre
   Individually and as Association of
18 Flight Attendants Chairman of
19 Grievance Committee, Pat Friend,
   individually and as President of
20 Association of Flight Attendants
21           Defendants

22 ────────────────────────────────

23                    COMPLAINT

24                     Parties

25

                  COMPLAINT - 1

1. Defendant Company United Airlines is a corporation organized and existing under the laws of the State of Illinois, and has its principal office and place of business located in the City of Elk Grove Village, State of Illinois, within the territorial jurisdiction of this Court. This defendant is engaged in aviation transportation in interstate commerce and, at all times mentioned herein, was an employer in an industry affecting commerce, as defined in sections 2(2) and 501(1) and (3) of the Act (29 USCA secs. 152(2), 142(1) and (3)), and within meaning of Sec. 301 of the Act (29 USCA & secmk; 185).

2. Defendant representatives of Company Frank Colosi, and Sara Field's principal place of business is Elk Grove Village, Illinois.

3. Defendant representatives of Union Paul MacKinnon, and Shirley Barber's principal place of business is Washington, D.C.  Maria Torre's is Chicago, Illinois. Pat Friend's is Washington, D.C.

4. The Association of Flight Attendants-CWA (AFL-CIO) union is, and at all times hereinafter mentioned was, a labor organization representing employees in an industry affecting commerce as defined in secs. 2(5) and 501(1) and (3) of the Act (29 USCA sec. 152(5), 142(1) and (3)), and within the meaning of sec. 301 of the Act (29 USCA sec. 185).  During all times hereinafter mentioned, this union was the recognized collective bargaining representative of the bargaining union of defendant Company's flight attendants, including plaintiff, employed in defendant Company's Inflight department, at its location in Boston, Logan International Airport.

Jurisdiction

1  5. Plaintiff brings this action under, and jurisdiction thereof is conferred
2    on this Court by virtue of Sec. 301 of the Labor Management Relations Act,
3    1947 (29 USCA Sec. 185), hereinafter referred to as the Act, to recover
4    damages for plaintiff's unlawful discharge by defendant United Airlines,
5    Inc. (Defendant Company), who is plaintiff's employer and their
6    representatives, and for breach by Association of Flight Attendants (CWA,
7    AFL-CIO) Local Union and their defendant representatives, of its duty of
8    fair representation owing to plaintiff, and for reinstatement by said
9    employer.

10
11                                    Facts

12  6. Plaintiff was employed by the defendant Company on April 17, 1999, as a
13    flight attendant, and was continuously in defendant's employ in that
14    classification until August 29, 2003, when plaintiff was unlawfully
15    discharged by defendant, as is more specifically hereinafter alleged.
16  7. As required by United Airlines, the plaintiff was a compulsory member of
17    the Association of Flight Attendants. The plaintiff was on medical leave
18    from October 2002 through the date of discharge, August 2003. On August 8,
19    2003, plaintiff stopped by the United Airlines office to drop off a
20    medical note stating plaintiff "Would like to... attempt to return to
21    work." and a copy of workers compensation order. She also called crew
22    scheduler to inquire of return to work training dates.
23  8. From September 2001, the plaintiff sought medical counsel for post-
24    traumatic stress after events of September 11, 2001. Pending the Iraqi
25    conflict with higher airline security issues, the plaintiff requested
     intermittent Family Medical Leave which would allow her to work but

1   permitted her a sick day without being disciplined. On September 18,

2   2002,United Airlines administrative supervisor (Paula DiMartino) sent an

3   internal email to plaintiff stating her Family Medical Leave had been

4   approved on a "continuous basis." On September 19, the plaintiff protested

5   by email that United had "terminated my employment when I requested

6   Intermittent FMLA." On October 8, 2002, the plaintiff flew a trip from

7   London to Boston. On October 9, plaintiff received a telephone call

8   message from Paula Martino stating "I am removing you from flying." On

9   October 9, a Federal Express letter stated "I would have to remove you

10  from your trips until you cleared United's Medical Department."  On

11  October 11, 2002, the plaintiff's medical provider spoke with United's

12  medical provider, Dr. Weiss. On October 31, 2002, Plaintiff emailed the

13  Association of Flight Attendants regarding a grievance that her

14  Intermittent Family Medical Leave had been denied. Subsequent

15  communication on grievance was made through May 2003.

16  9. On December 4, 2002, and several times through 2003, voluntary furlough

17      bids were granted to flight attendants who were not on medical leave.

18      As United needs flight attendants, they were recalled to return to work

19      December 2003, March 15, 2004 and April 15, 2004.

20  10.   On April 14, 2003, the plaintiff placed an internal United Airlines

21      complaint regarding disparate treatment of medical disability

22      administration.

23  11.   In a letter dated April 18, 2003, from the Association of Flight

24      Attendant's Paul MacKinnon, the plaintiff was "placed in bad standing

25      pending resolution" of her dues payment of $156. On April 30, 2003, the

        plaintiff was able to get a telephone call through to the voicemail of

COMPLAINT - 4

1  Association of Flight Attendants. On May 5, 2003, a conference call

2  message from the local union stated "She's gone to the outside". The

3  plaintiff received a letter dated May 16, from the union stating "As of

4  April 30, 2003, we have not received ... other information.""15 days ...

5  information", with a dues balance of $117. "Requesting termination of

6  employment." On May 30, 2003 and August 1, 2003, a certified mail receipt

7  was signed by the Association of Flight Attendants. A non-certified letter

8  dated August 4, 2003 from union Paul MacKinnon stated "We herewith call

9  upon the company to terminate employment." On August 14, 2003 certified

10 mail was sent to United Frank Colosi to dispute validity of Paul

11 MacKinnon's action of termination.

12 12.    This is also a complaint against union representatives for coercion of

13 employee's discharge - employee's failure to pay union dues [29 USCA secs.

14 158(a)(3), 158(b)(2), 160(b); 29 CFR sec. 102.20]. Plaintiff attempted to

15 make arrangements to fulfill the requirement that she pay dues as an

16 employee of United Airlines. The plaintiff attempted to contact the

17 union's international treasurer's office, Paul MacKinnon, by phone and

18 certified mail; but he failed to answer her demands and instead continued

19 termination proceedings under an unfair labor practice.

20 13.    On August 18, 2003 Plaintiff called her United Airline's supervisor,

21 Sherry Desmond. The supervisor was on vacation until August 29. A Federal

22 Express letter dated August 27, 2003 from United Airlines Frank Colosi

23 stated termination of the plaintiff's employment effective August 29, 2003

24 (letter copied to union). Plaintiff received a September 7, 2003 letter

25 from United stating her medical benefits were terminating. On September 9,

2003, the plaintiff received an electric shut-off notice from her light

1   department. In summary, during 2003 while the plaintiff, diagnosed with a
2   brain tumor, was undergoing medical treatment and financial hardship she
3   was barraged by actions for missed dues, unprocessed grievances, United's
4   appeal to industrial accident, United's appeal to unemployment, discipline
5   for illness, and termination contemporaneously with an action for
6   bankruptcy.

7   14.   On December 3, 1997, defendants herein entered into a collective
8   bargaining agreement covering the employees, including plaintiff, in the
9   bargaining unit, which agreement was in force during the entire period
10  involved herein. Both defendants have copies of the agreement, and for
11  that reason none is attached hereto. The agreement was entered into by
12  defendants for the benefit of the employees in the bargaining unit, and
13  plaintiff, as a member thereof, is accordingly entitled to the benefit of
14  the agreement and to enforce the provisions thereof.

15  15.   Section 30 of the collective bargaining agreement, entitled Union
16  Security, provides that a copy of discharge letter go to the Senior Vice
17  President of the company regarding delinquent dues.

18  16.   Section 30 of the collective bargaining agreement, entitled Union
19  Security, "D. Review Procedures" establishes a procedure, for the
20  presentation and disposition of grievances, and expressly provides that
21  all cases of discharge, for whatever cause, shall be subject to the
22  grievance procedure. This Articles reads in part as follows: "1. A
23  grievance by an employee who is to be discharged as a result of an
24  interpretation or application of the provisions of this Section shall be
25  subject to the following procedures. a. An employee who believes that the
    provisions of this Section have not been properly interpreted or applied

1   as it pertains to her/him may submit a request for review in writing

2   within five days from the date of notification by the Director Labor

3   Relations-Inflight, as provided ... b. The Director Labor Relations –

4   Inflight/designee shall forward a decision to the employee with a copy to

5   the Union. Said decision shall be final and binding on all interested

6   parties unless appealed as herein provided.  If the decision is not

7   satisfactory to either the employee or the Union, then either may appeal

8   the grievance within ten (10) days from the date of the receipt of such

9   decision ... All such grievances shall be processed.... Such grievances

10  shall be heard by the System Board within six months of receipt of the

11  decision by the Director Labor Relations-Inflight.  2. During the period a

12  grievance is being handled.. the employee shall not be discharged from the

13  Company."

14  17.    Section 30 of the collective bargaining agreement, entitled Union

15  Security, Section H. "General" provides that "collection of dues missed

16  because the employee's earnings were not sufficient to cover the payment

17  of dues ... will be the responsibility of the Union... It will be the

18  Union's responsibility to verify apparent errors with the individual Union

19  member ..."

20  18.    Article XI of the AFA Constitution and Bylaws, entitled "Hearing and

21  Appeal Procedures", establishes discipline for "refusing or willfully

22  neglecting to pay dues, initiation fee, assessments, fines or financial

23  obligations to the Union." The plaintiff's request for waiver and

24  assistance substantiates she did not refuse or willfully neglect dues.

25  19.    Article XII of the AFA Constitution and Bylaws, entitled "Delinquency,

    Bad Standing and Loss of Membership", establishes that an employee may

1    make "satisfactory arrangements for payments". It also provides that an

2    employee may be subject to expulsion "provided that if the member's Local

3    Executive Council and the International Secretary-Treasurer of the Union

4    believe that extenuating circumstances exist, and the International

5    President concurs, the individual may be permitted to remain delinquent as

6    deemed reasonable." All certified mail and communication sent by the

7    Plaintiff to Paul MacKinnon, the International Secretary-Treasurer of the

8    Union were not responded to or acknowledged by the union except by U.S.

9    Postal Service return receipt.

10   20.    As alleged above, plaintiff was discharged by Defendant Company. The

11   notice of discharge recited, as the supposed reason for the action taken,

12   that plaintiff failed to pay union dues and the Union had failed to hear

13   from her. Plaintiff denies that she willfully refused to pay union dues,

14   and further denies that there was "just cause" for her dismissal as

15   required by the agreement. Plaintiff alleges that the true reasons for her

16   discharge were retaliation for filing workers compensation claim;

17   retaliation for filing grievances; retaliation for claim of harassment

18   based on medical absence; disability; and plaintiff's comments on security

19   violations related to September 11, 2001 events; filing of aviation safety

20   reports on October 2, 2002 and July 2, 2002   (Federal Aviation

21   Administration, Whistleblower Protection Act).

22   21.    Plaintiff protested her discharge to defendant Union's representative

23   serving plaintiff's department by filing a grievance and written

24   correspondence. A grievance was not filed by defendant Union on

25   plaintiff's behalf. The grievance was not carried to any steps of the

     grievance procedure by the defendant Union or Defendant Company.

22.    Defendant union failed to acknowledge or process grievances and instead permitted the time for doing so to lapse. Defendant representatives of Union and Defendant Company did not give advice or notice on remedies or process, on the contractual grievance procedure and legal recourse. Plaintiff's filing of grievances, telephone calls, and letters to remedy situation before and after discharge of employment were futile pursuits. The matter of her discharge filed as a grievance by plaintiff and efforts to process a grievance or to have the union process a grievance on September 29, 2003 (wrongful discharge), and October 2002 (Family Medical Leave Act) were futile. Defendant Company, Mr. Frank Colosi who is United's labor relations manager, did not offer procedure or remedies, or consent to an investigation when urged to do so by plaintiff (August 14, 2003, September 29, 2003 and November 2003).

23.    The plaintiff received a letter from Frank Colosi dated January 15, [2004] which then gave notice that an appeal of his decision should have been made within 10 days of August 27, 2003. The January 15 letter was copied to International-Treasurer of union, Shirley Barber.

24.    Defendant union representatives failed to acknowledge or process Plaintiff's request for waiver of union dues. Nor did the defendant Union representatives give the plaintiff an option of a minimal burden of paying reduced Union dues in violation of the Railway Labor Act, Sec 2, 45 USCA sec. 152, or notice of Becks rights not to pay dues to the union or withdraw from the union, or to pay dues to a charitable foundation (e.g. the Cause Foundation), or notice on dues deferral (agenda item 29 of the union committee meeting of October 15-17 2002, and January 21-23, 2003). Defendant union representatives did discuss waiver of union dues and

1  granted waiver of union dues for those who were not on medical leave

2  (Committee meeting January 21-23, 2003). Defendant Union representatives

3  thus deferred from their usual practice or custom in the handling of dues

4  delinquencies. The Defendant Union representatives did not give Plaintiff

5  the following opportunities (as outlined in the ABC's of Membership): 1.

6  to have a "promissory agreement to assist in payment of delinquent dues as

7  afforded other flight attendants; 2. Deferred – due to financial hardship;

8  3. "Standing A" "FA's celinquency or dues billing are being researched";

9  4. Grievance pending – dues not owed; 5. Non-paying. This flight attendant

10  has no obligation to AFA." The defendant union representative waived its

11  rights under 29 USCS sec. 158(b)(2) to seek discharge of employee for

12  failure to pay union dues in absence of granted waiver, or discussing late

13  or partial payment of dues. Requests of investigation into payment of

14  union dues were sent to Paul MacKinnon (AFA International Treasurer) via

15  certified mail on May 28, 2003, and July 30, 2003. Plaintiff had returned

16  dues bills with the back form filled out with leave-of-absence box checked

17  off. The April 18 letter stated balance of $156 is due, the May 16 letter

18  stated $117 balance reflecting plaintiff's contact with union

19  representatives. Adjustments on June 9, 2003 bill were made to February

20  2003 after telephone call to union requesting waiver paperwork. Plaintiff

21  made telephone call to defendant union representative on April 30, 2003 at

22  9:30 a.m. stating she was not happy the voicemail box was full for last

23  few days, that the AFA nad voided her voting ballot, that she was on

24  medical leave, and request for waiver.

25  25.    Plaintiff alleges the fact to be that defendant Union representatives,

in breach of its statutory duty of fair representation owing to plaintiff

under the provisions of the Act, conspired with defendant Company to permit plaintiff's discharge to stand, although there was no just cause therefor; that the negotiations between defendants with respect to plaintiff's grievance were spurious, carried on in bad faith, and deliberately designed to give plaintiff the false impression that a sincere effort was being made by defendant Union representatives to resolve the grievance by securing plaintiff's reinstatement; that, unknown to plaintiff, the officials of defendant Union, the official who represented plaintiff's grievance, were secretly hostile to plaintiff because of plaintiff's objections that Family Medical Leave Act grievance and medical grievances of plaintiff were not filed/processed (under violation of the Americans with Disabilities Act, 42 USC sec. 12101 et seq. the union discriminated and retaliated against plaintiff based on her work-related disability) and therefore plaintiff's subsequent filing of a workers compensation claim, and because plaintiff had a medical disability, and therefore the defendant Union representatives decided to acquiesce in plaintiff's discharge; that at grievance meetings of defendants that were not attended by plaintiff it was agreed between them that defendant Company's action would not be opposed and that no demand for arbitration of plaintiff's discharge would be made by defendant Union representatives. Defendant Union representatives and Defendant Company and Defendant Company representatives with inexcusable neglect failed to respond to grievances and request for investigation, under actions that were arbitrary, discriminatory and in bad faith.

26.    From November 2002 through May 2003, Plaintiff inquired as to the status of her grievances on sick leave policy and intermittent Family Medical Leave. No explanation was given.

27.    This is also an action to establish liability of corporate officer for corporation's wrongful conduct in relation to union representatives.

28.    This is also an action to establish liability of corporate officer for corporation's wrongful conduct in relation to United Airlines representatives.

29.    A meeting of executive boards were held May 20-21, July 22-34 and October 24-27, 2003, and January 13-15, 2004, where Union had decided not to take her grievances on dues waiver and thereafter wrongful discharge to arbitration. Plaintiff alleges that the union officials constituting the executive board did not entertain grievances, that their decision not to demand arbitration was not an exercise of good faith judgement on their part, but, rather, was made because of their hostility to plaintiff and in pursuance of their conspiracy and agreement with the defendant Company as previously alleged.

30.    Both Defendant Union representatives and Defendant Company discriminated against employee in violation of Title VII when they allowed all flight attendants during 2002 and 2003, except those on medical leave, to take a job-protected furlough. Flight attendants on medical leave were coerced to "clear medical" before they could take a furlough.

31.    Section 704(a) of the Title VII of the 1964 Civil Rights Act ("Title VII"), (42 USC sec. 2000e(3)(a)) Retaliation). The plaintiff has a prima facie claim that her termination by United Airlines and the Association of Flight Attendants was due to retaliation thus in violation of Title VII.

1   The plaintiff was terminated, an adverse employment action, in retaliation
2   for statutorily protected conduct by filing workers compensation claim,
3   and two medical related grievances. A causal connection exists between the
4   protected activity and adverse employment action. The plaintiff was
5   terminated within two weeks of giving United Airlines a return to work
6   notice. A return to work would have placed plaintiff in automatic payroll
7   deduction for dues. The union did not approve of her filing a workers
8   compensation claim. Termination due to union dues was a pretext. It
9   follows that this is also a Retaliation claim against the union
10  representatives as an employer. The Association of Flight Attendants may
11  be considered an employer Under Title VII, as it is an interstate commerce
12  and has at least 15 employees.  42 U.S.C. § 2000e(b).

13  32.   Defendant Company discriminated against employee in violation of Title
14  VII when they refused to acknowledge or process her workers compensation
15  claim for work-related Post Traumatic Stress Disorder until ordered by the
16  Massachusetts Department of Industrial Accidents. Defendant Company
17  withdrew their Appeal of Conference Order in July 2003, within one month
18  of employee's termination. Defendant Company United Airline's representing
19  attorney, Scott Smith, in a letter dated May 23, 2003 stated "I am
20  returning this original [dues] invoice to you as United is not required to
21  pay your union dues as part of the worker's compensation case."

22  33.   This is a cause of action for discharge in retaliation for filing a
23  workers compensation claim.

24  34.   This is a cause of action to recover workers' compensation benefits for
25  injury resulting from aggravation or acceleration of, or combination with,
    pre-existing condition. The plaintiff sustained disability, post-traumatic

COMPLAINT - 13

stress, was awarded by Department of Industrial Accidents for March 2003. The medical condition, in fact, was treated from March 2002 through the date of discharge, August 2003. The plaintiff requests that the defendant company records reflect her medical leave as a workers compensation leave for her absence from October 2002 through August 2003.

35.    Title VII Liability for the Union as a Labor Organization. Title VII liability is established pursuant to 42 U.S.C. § 2000e-2(c) and/or 2000e-3. There is still a violation of Title VII without violation of the duty of fair representation as the union failed to pursue issues against Defendant Company, and is liable by acquiescence of Defendant Company's misconduct in not furthering union grievances on medical leave and policy. Defendant union international treasurers Paul MacKinnon and Shirley Barber, along with Maria Torres created a hostile environment related to union membership in their handling or lack of handling of grievance issues thereby ratifying Defendant Company's removal of the Plaintiff from her position as a flight attendant.

36.    Americans with Disabilities Act 42 USC Sec. 12112(b)(5)(A). When Defendant Company United Airlines refused to allow the plaintiff Intermittent Family Medical Leave to accommodate for her work-related Post Traumatic Stress Disorder, they did not make reasonable accommodation to the known mental limitation of an otherwise qualified individual with a disability who is an employee of the company (violating the Americans with Disabilities Act). This would include a modified work schedule. Instead the Defendant Company "removed" the plaintiff from her flying schedule on October 9, 2002.  The plaintiff's removal from work increased her Post Traumatic Stress Disorder and depression. 42 U.S.C. § 12203(a),

COMPLAINT - 14

1  respectively.  The ADA also includes a provision stating: "It shall be
2  unlawful to coerce, intimidate, threaten, or interfere with any individual
3  in the exercise or enjoyment of, or on account of his or her having aided
4  or encouraged any other individual in the exercise or enjoyment of, any
5  right granted or protected by [the ADA]."

6  37.   Defendant Company violated Family Medical Leave Act by coercing
7  plaintiff into full time continuous medical leave in October 2002 rather
8  than allowing her intermittent Family Medical Leave as requested by her
9  medical provider. Union representatives were culpable in not processing
10 her grievance of October 2002, on the Family Medical Leave matter which
11 resulted in her loss of employment, income, ability to pay union dues, and
12 afford her due process with the U.S. Department of Labor.

13 38.   29 CFR Sec. 1630.15 In absence of accommodation, the plaintiff filed a
14 grievance with the union representatives. The union representatives did
15 not process the grievance. But for the negligence of the Union
16 representatives in filing the grievance, and defendant Company's refusal
17 to accommodate the plaintiff's disability, the plaintiff lost the
18 opportunity to return to work which would have permitted her to pay union
19 dues. The Association of Flight Attendants representatives violated 29 CFR
20 Sec. 1630 when representatives refused to represent the plaintiff in
21 acknowledging her Family Medical Leave grievance.  The disability could
22 have been reasonably accommodated by Defendant Company policy that was
23 already sanctioned (furlough, intermittent medical leave). The plaintiff
24 was forced to use all her family medical leave in one continuous period,
25 leaving the rest of her medical leave in an unprotected status.

39.   Complaint - by union member expelled for exercise of rights under sec.
101(a)(2) of LMRDA - for reinstatement, injunction, and compensatory and
punitive damages [29 USCA sec. 411(a)(2), 412, 529; Fed R Civ P 8(a), 65].
Plaintiff, a resident of the City of Concord, State of Massachusetts,
brings this action under, and jurisdiction is conferred on this Court by,
the provisions of sections 101(a)(2), 102, and 609 of the Labor-Management
Reporting and Disclosure Act of 1959 (29 USCA sec. 411(a)(2), 412 and
529), hereinafter referred to as the LMRDA.

40.   Plaintiff was a member of defendant Association of Flight Attendants
Local Council 27, an unincorporated association.

41.   The violations of the LMRDA hereinafter alleged occurred in the City of
Boston, State of Massachusetts, within the territorial jurisdiction of
this court.

42.   The local union Association of Flight Attendants is the collective
bargaining representative of employees, including this plaintiff, of
United Airlines Corporation, certified as such under the provisions of the
National Labor Relations Act, as amended (29 USCA sects 151 et seq) or is
recognized as the collective bargaining representative of employees,
including this plaintiff, of United Airlines Corporation an employer
engaged in an industry affecting commerce within the meaning of sec.
3(j)(2) of the LMRDA (29 USCA sec. 4102 (j)(2)), and is therefor, a labor
organization engaged in an industry affecting commerce within the meaning
of sec. 3(j)(1) of the LMRDA [29 USCA sec. 402 (j)(1)].

43.   The individual defendants, Pat Friend, is respectively the President of
the Association of Flight Attendants, whose principal place of business is
Washington, D.C., within the territorial jurisdiction of this Court.

44.    On or about May 16, 2003, plaintiff was served by defendant union

representative Paul MacKinnon notice of purported charges, alleging that

the union had not heard from plaintiff regarding payment of union dues

(balance due $117.). Copied on letter were MEC president of United

Airlines (who would be defendant Pat Friend) and LEC President Council 27

(Karen Scopa).

45.    Plaintiff alleges that such charges were wholly spurious and were

instigated by union representatives in reprisal for statements made by

plaintiff, outside union meetings, criticizing said union representatives

conduct in their capacity as officials of local union in not filing

grievances. The plaintiff reporting the conduct to the union Employee

Assistant Program were protected by the provisions of sec. 101(a)(2) of

the LMRDA (29 USCA sec. 411(a)(2)); the actions of defendant union

representative, Paul MacKinnon, in expelling plaintiff from membership by

placing her in bad standing and of the individual union representatives in

instigating plaintiff's discharge under that section and under sec. 609 of

the Act (29 USCA sect. 529); and plaintiff is accorded the right under

section 102 of the LMRDA (29 USCA 412) to file the instant action to

secure appropriate relief against said defendants.

46.    The plaintiff had filed and won a workers compensation suit in relation

to events of September 11, 2001. The plaintiff had also filed two

grievances with the Boston office, which were not processed by the Union,

against the United Airlines policy disciplining flight attendants who were

sick, and not allowing flight attendants the use of Intermittent Family

Medical Leave.

1  47.   Plaintiff attempted to seek waiver of union dues, as advised by United

2  Airlines' flight attendant charity "The Cause Foundation", and other

3  methods to exhaust her administrative remedies for at least four months

4  before and after her termination from employment. In addition to

5  exhausting perceived internal union and United Airline policy, researching

6  standards and procedure of a myriad of administrative agencies was unduly

7  burdensome being far beyond the scope and knowledge of a reasonable person

8  standard.

9  48.   Plaintiff was unfairly disciplined by being placed in "bad standing"

10  and then terminated without a full and fair hearing accorded by right

11  under 29 USCS 411(a)2 and (5). She was not afforded adequate procedural

12  protections and did not know of ways to remedy the situation.

13  49.   Plaintiff alleges that the Collective Bargaining Agreement is an

14  unconscionable contract for members in regards to discharge for failure to

15  pay union dues. The Collective Bargaining Agreement is inconsistent and

16  ambiguous, violating the respective AFA Articles of Incorporation, and

17  U.S. Labor Law. Members arbitrarily placed in "bad standing" are

18  apparently fully ostracized from the union grievance process making it

19  impossible for them to proceed administratively within the Defendant union

20  and Company in actions against them.

21  50.   Defendant Union representative Paul MacKinnon and Defendant Company

22  representative Frank Colosi violated Personnel Records Law (Massachusetts

23  General Laws Chapter 149, section 52C) and the Labor Management Reporting

24  and Disclosures Act, when each refused to acknowledge a request from

25  plaintiff for a copy of her personnel file and records related to union

dues. Defendant Company representative Frank Colosi continued to violate

law when attention was requested in letter to Mr. Frank Colosi, on

November 26, 2003 from Assistant Attorney General Rosalyn Garbose.

Therefore plaintiff requests a supoena deuces tecum for files.

51.    Plaintiff respectfully requests a supoena deuces tecum for production

of all documents and disposition related to plaintiff from the Association

of Flight Attendants, information on the number of waivers of union dues

granted other flight attendants, the number of dues deferrals given, other

methods processed on dues delinquency and the circumstances, and

information on the processing of her grievances.

52.    Plaintiff respectfully requests an injunction to return to work as a

flight attendant pending investigation.

53.    As a result of plaintiff's discharge by defendant Company, in violation

of plaintiff's rights under the collective bargaining agreement, and in

breach by defendant Union representatives of its duty of fair

representation owing to plaintiff, as alleged above, plaintiff has

suffered grievous and extensive damages, as follows: Loss of wages ($1723-

$2,266 per month), past and future, loss of per diem pay (approximately

$400 per month), loss of health coverage including cost to pay for future

operation and care of a brain tumor ($300,000), of health coverage and

cost for future medical care on findings from mammography irregularity

($100,000), of company life insurance coverage ($74,000), loss of

opportunity to attend vocational training ($75,000.). Anticipated monies

for court costs (current, remand, appeal) ($100,000).

54.    The plaintiff requests a trial by jury.

55.    Plaintiff desires to be reinstated to her former job at defendant

Company in a non-hostile environment, without attempt of termination

during flight attendant certification training, and alleges that she is

entitled to such reinstatement retroactive to the date of her discharge,

without any break in her seniority. Plaintiff also prayers for relief in

the above amounts ($700,000) damages, compensatory and punitive damages.

Dated this 23rd day of February, 2004

Harriet Menezes
169 Thoreau Street,
Apt. 8
Concord, MA 01742
Pro Se
(978)369-4693

COMPLAINT - 20