

///// U N I T E D

2003 - 2009
FLIGHT ATTENDANT
AGREEMENT

ASSOCIATION OF
FLIGHT ATTENDANTS

**2003-2009**

**RESTRUCTURING AGREEMENT**

**between**

**UNITED AIRLINES, INC.**
**and**
**THE FLIGHT ATTENDANTS**

**in the service of**
**UNITED AIRLINES, INC.**

**as represented by**

**THE ASSOCIATION OF FLIGHT ATTENDANTS**


THIS AGREEMENT is made and entered into in accordance with the provisions of Title II of the Railway Labor Act, as amended, by and between UNITED AIR LINES, INC. (hereinafter referred to as the "Company") and FLIGHT ATTENDANTS in the service of UNITED AIR LINES, INC., as represented by the ASSOCIATION OF FLIGHT ATTENDANTS (hereinafter referred to as the "Union").

WITNESSETH

It is hereby mutually agreed:

## TABLE OF CONTENTS

Section                                                              Page

1       Recognition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1
2       Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2
3       Union Activity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
4       General . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
5       Compensation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .25
6       Expenses, Transportation and Lodging . . . . . . . . . . . . . . . . . . .36
7       Hours of Service and Contractual Legalities . . . . . . . . . . . . . .41
8       Minimum Pay and Credit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .51
9       Flight Assignments and Scheduling Procedures . . . . . . . . . .55
10      Reserve Scheduling Procedures . . . . . . . . . . . . . . . . . . . . . . .80
11      Deadheading . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .93
12      International Operation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .96
13      Military Airlift Command . . . . . . . . . . . . . . . . . . . . . . . . . . . . .123
14      Temporary Duty Assignment . . . . . . . . . . . . . . . . . . . . . . . . .128
15      Training and Meetings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .130
16      Uniforms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .133
17      Seniority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .137
18      Vacations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .141
19      Sick Leave . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .148
20      Physical Examinations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .151
21      Reduction in Personnel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .154
22      Filling of Vacancies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .159
23      Leaves of Absence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .166
24      Moving Expenses . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .171
25      Personnel File . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .173
26      Grievance Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .176
27      System Board of Adjustment . . . . . . . . . . . . . . . . . . . . . . . . .182
28      Missing, Internment, Prisoner of War Benefits . . . . . . . . . . .189
29      Worker's Compensation Benefits . . . . . . . . . . . . . . . . . . . . . .191
30      Union Security . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .192
31      Safety and Health . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .199
32      Savings Clause . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .203
33      Benefits . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .204
34      Retirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .228
35      Duration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .240

Page 3

## AGREEMENTS, SUPPLEMENTAL AGREEMENTS
### LETTERS OF UNDERSTANDING

Page

"A" Scale Pay Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .243
AFA Staff Travel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .245
Benefit Plan Modifications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .246
Blue Ribbon Committee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .247
CJA Re-Opener . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .248
Commuter Policy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .249
Commuter - Personal Emergency . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .251
Contract Dispute 2003-2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .254
CRAF . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .256
Delhi . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .263
Dispute Resolution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .265
Distribution Agreement (Equity) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .266
Domestic Legal Rest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .269
Donation Check-Off Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .270
Duty Free Commission . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .274
Economic Stabilization Guidelines . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .275
Exchange Rates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .278
Extended Duty Time - International . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .280
Extended Duty Time . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .282
First Right of Hire . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .283
Foreign Nationals . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .284
Increase Trip Trade Allocation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .287
Interim Seniority Ranking . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .288
International Flying Distribution . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .289
Low Cost Operation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .290
Mailbox Criteria . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .293
Onboard Research . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .294
Operation Sideletter - Separate Operations . . . . . . . . . . . . . . . . . . . . . . .295
Paycheck Mailing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .298
Preferential Bidding System . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .299
Pre-Medicare . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .302
Recognition of International Domicile Issues . . . . . . . . . . . . . . . . . . . . . . .305
Reserve 0500 Re-Opener . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .307
Reserve Pagers . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .308
Resignation - Special Pass Benefit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .309

| | Page |
|---|---|
| Retirement-Annual Passes Retired | 310 |
| Retirement-PAA Retirement | 311 |
| Safe Airlines | 313 |
| Scope Agreement | 314 |
| 747 Dumbwaiter | 316 |
| Special Assignment Calculation | 317 |
| Taking Tickets Off Aircraft | 318 |
| TDY-Domestic and International | 319 |
| Training Jumbo Qualification | 321 |
| Transitional Terms | 323 |
| Uniform Stripes | 325 |
| Vacation Allocation-Merge | 326 |
| Wage Garnishments | 327 |
| Waiver of Transit Time | 328 |

Page 5

## SECTION 27
## SYSTEM BOARD OF ADJUSTMENT

A.  Establishment of Board

In compliance with Section 204, Title II of the Railway Labor Act, as amended, there is hereby established a System Board of Adjustment for the purpose of adjusting and deciding disputes or grievances which may arise under the terms of this Agreement and any amendments or additions thereto, and which are properly submitted to it after all steps for settling disputes and grievances as set forth in Section 26 have been exhausted.

B.  Membership

1.  The System Board of Adjustment shall consist of four (4) members, two (2) selected by the Company and two (2) selected by the Union. In addition, the Union and Company shall each designate an alternate, and, in the event of the unavailability of a Board member, the respective alternate shall act as a Board member in place of the absent Board member.

2.  Notwithstanding Paragraph B.1 above, on a case by case basis, with agreement between the parties, the System Board of Adjustment may consist of two (2) members, one (1) selected by the Union and one (1) selected by the Company.

C.  Term of Service

Members of the Board will serve for one (1) year from the date of their appointment, or until their successors have been duly appointed.

Vacancies in the membership of the Board shall be filled in the same manner as is provided herein for the selection and appointment of the original members of the Board.

D.  Jurisdiction

The Board shall have jurisdiction over disputes between any employee or the Union and the Company and between the Company and the Union or any employee growing out of grievances or out of interpretation or application of any of the terms of this Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, basic rates of compensation or working conditions covered by this Agreement or any amendment thereto.


Page 6

**S
Y
S
T
E
M

B
O
A
R
D**

E.  Consideration of Disputes

The Board shall consider any dispute properly submitted to it by an employee covered by this Agreement, by the President of the Union or by the Chief Operating Officer of the Company when such dispute has not been previously settled in accordance with the terms provided for in this Agreement, provided that the dispute is filed with the Board within thirty (30) days after the procedure provided for in this Agreement has been exhausted. If a dispute is not filed within such time, the action of the Company or Union shall become final and binding.

F.  Organization

1.  Appointments of members of the Board shall be made by the respective parties within thirty (30) days from the date of the signing of this Agreement and said appointees shall meet in the City of Chicago, Illinois within forty-five (45) days from the date of the signing of this Agreement, and shall organize and select a Chairperson and a Vice Chairperson, both of whom shall be members of the Board. The term of office of Chairperson and Vice Chairperson shall be one (1) year. Thereafter, the Board shall designate one of its members to act as Chairperson and one to act as Vice Chairperson for one (1) year terms. Each officer so selected shall serve one (1) year and until a successor has been duly selected. The office of Chairperson shall be filled and held alternately by a Union member of the Board and by a Company member of the Board. When a Union member is Chairperson, a Company member shall be Vice Chairperson, and vice versa. The Chairperson, or in her/his absence, the Vice Chairperson shall preside at meetings of the Board and at hearings, and shall have a vote in connection with all actions taken by the Board.

2.  Cases shall be scheduled for hearing during one (1) week each month and shall be held at the Company's headquarters, unless otherwise agreed by the Board. At the request of either party, an additional week of hearings shall be scheduled no more than once per calendar quarter. These additional quarterly hearings shall be scheduled in consecutive days not to exceed one (1) week.

G.  Submissions

All disputes properly referred to the Board for consideration shall be addressed to the Chairperson. Five (5) copies of each petition, including all papers and exhibits in connection therewith, shall be forwarded to the

Chairperson who shall promptly transmit one (1) copy thereof to each member of the Board. A copy of all papers and exhibits shall be served on the other party. Each case submitted shall show:

1. Question or questions at issue.

2. Statement of facts.

3. Position of employee or employees.

4. Position of Company.

When possible, joint submissions should be made, but if the parties are unable to agree with a joint submission then either party may submit the dispute and its position to the Board. No matter shall be considered by the Board which has not first been handled in accordance with the appeal provisions of this Agreement.

H.  Hearing Dates

Upon receipt of notice of the submission of a dispute, the parties, by designated representatives, shall set a hearing date which shall be the first open date during the regular monthly meetings of the System Board. At the request of either party, cases may be heard out of the order in which they are submitted. The aforesaid designated representatives shall notify the Board members and the parties to the dispute of the hearing dates.

I.  Representatives/Witnesses

Employees covered by this Agreement may be represented at Board hearings by such person(s) as they may choose and designate and the Company may be represented by such person(s) as it may choose and designate. Evidence may be presented either orally or in writing or both. Any witness testifying orally or by deposition may be required to testify under oath at the request of either party.

On request of individual members of the Board, the Board may, by majority vote, or shall at the request of either the Union members or the Company members thereon, summon any witnesses who are employed by the Company and who may be deemed necessary by the parties to the dispute, or by either party, or by the Board itself, or by either group of members constituting the Board.

The number of witnesses summoned at any one time shall not be greater than the number which can be spared from the operation without interference with the services of the Company.

Section 27

J.  **Majority Rule**

A majority vote of all members of the Board shall be competent to make a decision.

K.  **Effect of Decisions**

Decisions of the Board in all cases properly referable to it shall be final and binding upon the parties thereto.

L.  **Deadlock Procedures**

In the event of a deadlock in the case of any dispute properly before it, it shall be the duty of the Board to endeavor to agree, within thirty (30) days of the date of such deadlock, upon a procedure for breaking such deadlock. A majority vote of all members of the Board shall be competent to reach such agreement and the action of the Board operating under such procedure shall be final and binding upon the parties hereto. If after expiration of said thirty (30) days, the deadlock is not broken or such case is not otherwise disposed of, either party may notify the other in writing that the services of a referee are desired. Within ten (10) days after such notification, the members of the Board will select a referee from the panel of at least eleven (11) potential referees, such panel to be hereafter agreed to by the parties hereto. The referee shall sit with the Board as a member thereof in the subsequent consideration and disposition of the case. By mutual agreement of the parties, the services of one of the referees on said panel may be requested immediately for any case appealed to the Board.

Within thirty (30) days after the selection of the referee as provided above, the Board and the referee shall consider and review the prior record in the case, and may call such additional witnesses and receive such additional evidence as the Board may deem necessary. Either party may make written request to the Board for the privilege of presenting additional witnesses or documentary evidence, and the Board, with the referee, may at their discretion, permit such presentations. The decision of the Board shall be rendered within ten (10) days after consideration and review or after the close of any further hearing, and a majority vote of the members of the Board, including the referee, shall be necessary to reach such decision, which shall be final and binding upon the parties hereto.

The expenses and reasonable compensation of the referee selected as provided herein shall be borne equally by the parties hereto. The time limits specified in Paragraph L of this Section may be extended by mutual agreement of the parties to this Agreement.



M.  Rights Under Railway Labor Act

Nothing herein shall be construed to limit, restrict, or abridge the right or privileges accorded either to the employees or to the Company, or to their duly accredited representatives, under the provisions of the Railway Labor Act, as amended.

N.  Maintenance of Records

The Board shall maintain a complete record of all matters submitted to it for its consideration and of all findings and decisions made by it.

O.  Board Members Expenses

Each party will assume the compensation, travel expense and other expenses of the Board members selected by it.

P.  Witness Expenses

Each of the parties hereto will assume the compensation, travel expense and other expenses of the witnesses called or summoned by it. Witnesses who are employees/retirees of the Company shall receive free contingent air transportation on the Company's system from the point of duty, or assignment, or home to the point at which they must appear as witnesses and return, to the extent permitted by law.

Q.  Joint Expenses

The Chairperson and the Vice Chairperson, acting jointly, shall have the authority to incur such other expenses as in their judgment may be deemed necessary for the proper conduct of the business of the Board and such expenses shall be borne one-half (1/2) by each of the parties hereto. Board members who are employees of the Company shall be granted necessary leaves of absence for the performance of their duties as Board members. Board members shall be furnished non-revenue p ositive space (NRPS) transportation on the Company's system for the purpose of attending meetings of the Board.

R.  Independence of Board Members

It is understood and agreed that each and every Board member shall be free to discharge her/his duty in an independent manner, without fear that individual relations with the Company or with the Union may be affected in any manner by any action taken in good faith in her/his capacity as a Board member.

Section 27

S.   Pursuant to the provisions of Paragraph L of this Section, the parties shall name a panel of at least eleven (11) potential referees for the purpose of disposing of cases in deadlock before the Flight Attendant System Board of Adjustment and establish a procedure for filling vacancies on the panel and for selection of a referee therefrom within sixty (60) days of reaching an agreement.

   1.   Provisions of Referees

   The parties hereto shall jointly notify all members of the panel, original selectees or their replacement, of their selection, informing them of the nature of their duties, the parties to the Agreement and shall inquire and obtain their consent to serve as such panel member and shall also ascertain the fees and charges of such panel member, and such panel members shall not be considered eligible as panel members until their fees and charges are approved by the parties hereto. The parties agree to renegotiate the panel of arbitrators on a yearly basis. The negotiations will occur and will conclude during the first week of September. The panel will remain intact for one (1) calendar year, provided that any member who is then acting as a referee in any case or cases pending before the Flight Attendant System Board of Adjustment at the end of a calendar year and is subsequently removed from the panel, shall be permitted to serve until the completion of such case or cases. During the calendar year either party may remove an arbitrator from the panel with notice to the other party, with the understanding that the arbitrator shall be permitted to conclude any outstanding case(s).

   2.   Vacancies

   In the event that any panel member refuses to accept such appointment, dies or resigns from said panel, or a vacancy or vacancies occur therein for any other reason, her/his or their names shall immediately be stricken therefrom and the parties hereto shall within fourteen (14) days after receipt of notice of such refusal, death, resignation or vacancy, meet and select a successor for such member or members as may be necessary to restore the panel to full membership provided that the parties hereto shall use every reasonable and diligent effort to restore the panel to full membership within thirty (30) days after notice of such refusal, death, resignation or vacancy and provided further that in the event that the parties hereto shall not have agreed upon such replacement member or members within such thirty (30) days, an additional fifteen (15) day period after the expiration of the

original thirty (30) days shall be allowed the parties for the purpose of restoring the panel to full membership.

However, in the event that there is a deadlock case or cases then pending before the Flight Attendant System Board of Adjustment and the panel has not been restored to full membership upon the expiration of the fifteen (15) day period, then and in that event the members of the System Board shall select a referee to consider and dispose of such deadlocked case or cases from the remaining members of the panel in accordance with the provisions of this Section.

3. Deadlock Selection

The members of the Flight Attendant System Board of Adjustment shall endeavor to agree on a member of the panel to sit with the Board to decide a deadlocked case or cases. If the members are unable to agree upon a member of the panel, the following method of selection shall be employed:

a. A member of the System Board of Adjustment representing the party filing the case with the System Board of Adjustment and a member of the System Board of Adjustment representing the other party shall in that order alternate in striking the names of eligible panel members until only one remains, which remaining name shall be recognized as the selected referee.

b. In the event that the referee so selected shall be unable to serve as referee in the particular case or cases within a reasonable time, the procedure described in Paragraph 1 above for selection shall again be followed until a referee is selected who is available to serve.



## SECTION 30
## UNION SECURITY

Modified Union Shop

A.  Conditions

1.  Each Flight Attendant hired on or after October 1, 1977 shall be required as a condition of employment to become a member of the Union upon successful completion of probation as a Flight Attendant.

2.  Flight Attendants hired before October 1, 1977 are required as a condition of employment to either voluntarily attain Union membership or to pay to the Union each month a service charge equal to the regular and usual monthly dues.

3.  Flight Attendants under Paragraph 2 above who are not members of the Union may voluntarily apply for Union membership under the regular terms established by the Union. Once accepted, such individuals shall be governed by the Union membership provision herein.

4.  All employees covered by this Agreement who were members of the Union prior to January 1, 1970 or who hereafter become members thereof during the term of this Agreement must as a condition of continued employment retain their membership in the Union for the duration of the Agreement by tendering the standard monthly membership dues.

B.  Application for Membership

1.  Newly employed Flight Attendants shall make application for membership in the Union within sixty (60) days after the date of employment and shall be admitted to membership in the Union upon expiration of their probationary period as defined in Section 17 of this Agreement. All Flight Attendants who become members of the Union shall maintain such membership in accordance with the Union's Constitution and By-laws as a condition of continuing employment as a Flight Attendant, provided that this provision shall not apply to any employee to whom membership is not available upon the same terms and conditions as are generally applicable to any other member of the Union or with respect to employees to whom membership was denied or terminated for any reason other than failure of the employee to

U
N
I
O
N

S
E
C
U
R
I
T
Y

tender the initiation fee and periodic dues uniformly required as a condition of acquiring or retaining membership in the Union.

2. The Union, within thirty (30) days after the date of signing of this Agreement, shall furnish to the Company a list of its members in good standing as of said date, certified as correct by the President of the Union, and on the first of each month thereafter furnish to the Company a list of additional employees who have become members. If a dispute arises as to whether an employee was a member of the Union, on said date, or has become a member thereafter, such dispute shall be handled in accordance with the provisions of Section 26 of the Flight Attendant Agreement.

C.  Delinquent Dues

1.  If any employee of the Company covered by this Agreement becomes more than sixty (60) days delinquent in the payment of her/his service charges, initiation fees, assessments and/or membership dues, the Union shall notify such employee by certified mail, return receipt requested, copy to Senior Vice President - People of the Company, that she/he is delinquent in the payment of such service charge, initiation fee, assessments and/or membership dues as specified herein and is subject to discharge as an employee of the Company. Such letter shall also notify the employee that she/he must remit the required payment within a period of fifteen (15) days or be discharged.

2.  If, upon the expiration of the fifteen (15) day period, the employee still remains delinquent, the Union shall certify in writing to the Senior Vice President - People with copy to the employee, that the employee has failed to remit payment within the grace period allowed and is, therefore, to be discharged. The Senior Vice President - People shall thereupon take proper steps to discharge such employee from the service of the Company.

D.  Review Procedure

1.  A grievance by an employee who is to be discharged as a result of an interpretation or application of the provisions of this Section shall be subject to the following procedures:

    a.  An employee who believes that the provisions of this Section have not been properly interpreted or applied as it pertains to her/him, may submit a request for review in writing within five (5) days from

Page 14

the date of notification by the Director Labor Relations-Inflight, as provided in Paragraph C.2. above. The request must be submitted to the Director Labor Relations-Inflight who shall review the grievance and render an opinion in writing not later than five (5) days following receipt of the grievance.

b. The Director Labor Relations-Inflight/designee shall forward a decision to the employee with a copy to the Union. Said decision shall be final and binding on all interested parties unless appealed as hereinafter provided. If the decision is not satisfactory to either the employee or the Union, then either may appeal the grievance within ten (10) days from the date of the receipt of such decision directly to the System Board of Adjustment established by Section 27 of this Agreement. All such grievances shall be processed by the System Board of Adjustment in accordance with the provisions of Section 27, provided, however, that the members of the System Board appointed by the Union and the Company in accordance with Section 27, Paragraph B, shall not participate in the hearings, deliberations or decisions of the Board. Such grievances shall be presented solely to a neutral referee selected in accordance with Section 27, Paragraph L, who shall hear and determine such grievance. Such grievances shall be heard by the System Board within six (6) months of receipt of the decision by the Director Labor Relations-Inflight.

2. During the period a grievance is being handled under the provisions of this Section, and until final award by the Director Labor Relations-Inflight or the neutral referee, the employee shall not be discharged from the Company nor lose any seniority rights because of non-compliance with the terms and provisions of this Section.

a. An employee discharged by the Company under the provisions of this Paragraph shall be deemed to have been "discharged for cause" within the meaning of the terms and provisions of this Agreement.

b. The Union agrees that it will indemnify and save the Company harmless against all forms of liability that shall arise out of or by reason of action taken by the Company, which action was requested by the Union under the provisions of this Section, or, arising out of Company compliance with this Section.

Section 30

E.    Dues Check-Off

1.    During the life of this Agreement, the Company will deduct from the pay of each employee the standard monthly membership dues uniformly levied in accordance with the Railway Labor Act, as amended, and the Constitution and By-Laws of the Union, service charges, initiation fees and assessments, provided such member of the Union voluntarily executes the following agreed upon form which will be prepared and furnished by the Union and known as a "Check-Off Form":

ASSIGNMENT AND AUTHORIZATION FOR VOLUNTARY CHECK-OFF OF UNION DUES

TO:  United Air Lines, Inc.

I, _____ do hereby authorize and direct UNITED AIR LINES, INC. to deduct from my earnings once each month, $___, the standard monthly membership Union dues (or such standard monthly membership dues as may hereafter be established by the Union), service charges, initiation fees and assessments. Such amount so deducted is hereby assigned to the Union, subject to all the terms and conditions of the Railway Labor Act, as amended, and the provisions of the applicable collective bargaining agreement. This assignment and authorization may be revoked by me in writing after the expiration of one year from the date hereof or upon the termination date of the Flight Attendant Agreement in effect at the time this is signed, whichever occurs sooner. A copy of any such revocation will be sent to the President of the Master Executive Council.

Signature of Employee_____

UA File Number_____

Classification Seniority Date_____

Domicile_____

Date of First Deduction_____

NOTE:  This form may also be used by Union non-members for monthly service charge deduction.

Page 16

Section 30                                    Page 196

2.  a.  During the Flight Attendants' initial training, the Company will make known to them the dues check-off provisions of this Agreement. Those desiring to participate in the payroll deduction plan for the remittance of dues will at that time complete two copies of the above check-off form. The Union will keep the Company supplied with sufficient forms for this purpose.

    b.  One copy of each completed form will be forwarded to the Union's headquarters office and the other copy to the Company's Payroll Department. On the first mid-month paycheck following completion of the employee's probationary period, the Payroll Department will begin the appropriate deduction. For example, if the Flight Attendant's classification seniority date falls in January, the first deduction will be made from her/his August 16 paycheck.

    c.  The Company will also make available to the Union the names and domicile assignments of those Flight Attendants from that particular graduating class who have elected not to participate in the check-off arrangement.

3.  All other check-off forms will be submitted from the Union's Headquarters Office to the Payroll Accounting Manager, Executive Offices, Chicago, Illinois. A properly executed check-off form, filed before the 15th of any month, will become effective the 1st of the month following its receipt by the Payroll Section of the Accounting Department, Chicago, Illinois. Illegible or improperly executed forms will be returned to the President of the Master Executive Council of the Union.

4.  Any notice of revocation as set forth in the check-off form must be in writing, signed by the employee, and delivered by certified mail, addressed to the Payroll Accounting Manager, United Air Lines, Inc., P. O. Box 66100, Chicago, Illinois 60666, with a copy to the President of the Master Executive Council as soon as processed through Company payroll procedures. Check-off form and notices so received by the Company will be stamp-dated on the date received and will constitute notice to the Company on the date received and not when mailed.

5.  With thirty (30) days notice from the Union, the Company will deduct from Flight Attendant earnings, any assessments levied by the Union.

page 17

Section 30                                      Page 197

F.    Dues Deductions

Deduction of total membership dues shall be made only at the time of the issuance of the second paycheck issued each month provided there is a sufficient balance due the employee at that time after all other deductions authorized by the employee or required by law (including money claims of the Company and the Credit Union loans) have been satisfied. The Company will remit all monies due the Union which have been deducted from paychecks issued to Flight Attendants on or before the 16th of the month. Such remittance shall be sent to a bank designated by the Union by wire transfer or such other electronic banking procedure agreed upon by the parties. Remittance shall be not later than the 26th of the same month in which the monies are deducted.

G.    Dues Terminations

An employee who has executed a check-off form and who has been (1) transferred or promoted to a job not covered by the Agreement, (2) resigns from the Company, (3) who is laid off, or is (4) otherwise terminated from the employ of the Company shall be deemed to have automatically revoked her/his assignment as of the date of such action and if she/he (1) transfers back or returns to a job covered by the Agreement, (2) is rehired, (3) is recalled or (4) re-employed, further deductions of Union dues will be made only upon execution and receipt of another check-off form.

H.    General

1.    Collection of any back dues owed at the time of starting deductions for any employee, collection of dues missed because the employee's earnings were not sufficient to cover the payment of dues in the specified pay period, and collection of dues missed because of accidental errors in the accounting procedure will be the responsibility of the Union and will not be the subject of payroll deductions, and the Company shall not be responsible in any way because of such missed collections. It will be the Union's responsibility to verify apparent errors with the individual Union member before contacting the Company Payroll Accounting Manager.

2.    In cases where a deduction is made which duplicates a payment already made to the Union by an employee and where a deduction is not in conformity with the provisions of the Union Constitution and Bylaws, refunds to the employee will be made by the Union.

Section 30                                               Page 198

3. United Air Lines, Inc., shall be held harmless and indemnified by the Union for any claims which may be made by the employee or employees by virtue of the wrongful application and misapplication of any of the terms of this Agreement.

4. Other provisions of this Agreement notwithstanding, the Company shall not be required to terminate the employment of any employee covered by this Agreement until such time as the services of a qualified replacement is available. The Company may not, however, retain any employee in service under the provisions of this Paragraph for a period in excess of forty-five (45) calendar days from the date of the Union's original notice, except by mutual agreement by the parties hereto

Page 19